Opinion filed August 21, 2025



In The

# Eleventh Court of Appeals

_____

## No. 11-25-00191-CV
_____

## IN RE TEXAS PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION

**Original Mandamus Proceeding**

### M E M O R A N D U M   O P I N I O N

Relator, Texas Property and Casualty Insurance Guaranty Association (TPCIGA), filed a petition for writ of mandamus in this court, seeking to compel the Honorable Jeffrey Todd Robnett, presiding judge of the 441st District Court of Midland County, Texas, to withdraw an order imposing a monetary sanction.

After reviewing the petition, and the responses thereto filed by Real Parties in Interest (RPI), and considering the applicable law, we conclude that the trial court abused its discretion when it sanctioned Relator. Accordingly, we conditionally grant Relator's petition for writ of mandamus.

## I. *Factual and Procedural History*

In 2019, following an automobile accident, Christina Granado, individually and as next friend of I.G. and M.G. Jr., (RPI Plaintiffs) sued Tina Marie Jamison and James Evert Holt (RPI Defendants), alleging that RPI Plaintiffs' damages were caused by the negligent operation of a vehicle by Jamison and negligent entrustment by Holt. In 2020, Holt's automobile insurance carrier, ACCC Insurance Company, was placed into liquidation proceedings, and Relator became obligated to investigate, compromise, settle, and pay "covered claims" against the RPI Defendants pursuant to the Guaranty Act. *See* TEX. INS. CODE ANN. §§ 462.001–.351 (West 2022) (the Guaranty Act); 462.301–.311 (setting out TPCIGA's duties relating to covered claims). RPI Defendants filed a notice of automatic stay of the proceedings on December 22, 2020. *See id.* § 462.309 (requiring a six-month stay in proceedings to permit TPCIGA to properly defend a pending cause of action). Presumably, the trial court proceedings were stayed from December 30, 2020, to June 30, 2021, in accordance with their motion and the statute. *See id.*

On February 3, 2023, the parties entered into a Rule 11 Agreement. Nearly two years later, on January 6, 2025, RPI Defendants moved to enforce the agreement, arguing that RPI Plaintiffs had failed to execute the requisite affidavits regarding other insurance, a condition precedent to settlement and a requirement under the Guaranty Act. *See id.* § 462.251. The trial court issued an order on January 30, 2025, requiring (1) RPI Plaintiffs to complete the affidavits no later than thirty days from the issuance of the order, and (2) RPI Defendants to distribute the settlement funds as agreed upon in the Rule 11 Agreement within two weeks of receiving RPI Plaintiffs' executed affidavits.

On May 7, 2025, RPI Plaintiffs filed a motion to enforce the settlement agreement, asserting that they had provided the affidavits on January 28, 2025, two

2

days before the trial court's order was issued, but had yet to receive any payment. On June 24, 2025, at a hearing on RPI Plaintiffs' motion, the parties informed the court of two concerns. First, RPI Plaintiffs' counsel explained that the hospital that provided care to one of the plaintiffs following the accident had filed a lien. Although the hospital has since "certified" to RPI Plaintiffs that they are not owed any more money, the lien remained. RPI Defendants' trial counsel noted that the lien's resolution was a condition precedent to the funding of the settlement under the Rule 11 Agreement.

RPI Defendants' trial counsel stated that Relator's involvement in the case was "[t]he other issue that [was] making this very difficult." RPI Defendants' trial counsel complained of an ongoing dispute involving a "new adjustor on the file" but did not elaborate. When asked by the trial court whether it had "control over" Relator's file adjuster, RPI Defendants' counsel responded, "You should, Judge, yes." The trial court thereafter issued a written order, requiring that "the claims adjuster individually assigned to the aforementioned file appear in person, and not through any assignee or agent, along with the parties."

At a hearing held three days later, RPI Defendants' trial counsel notified the trial court that she had "passed along" the trial court's order to Relator and was "informed that they d[id] not intend to have anybody" present. The following colloquy occurred:

> THE COURT: Well, let's talk about this person not being here. Anything I can do about that?
>
> [PLAINTIFFS]: Your Honor, I would believe that you can order sanctions. That is a requirement that the Court entered on behalf of someone who is acting as representative and the one funding this. This is the second time that the TPCIGA has chosen to thumb their nose at this Court with regards to orders entered that would apply to them, and it would be my opinion you can enter a sanction.

Now, you may have to enter that sanction through [Defense counsel's] firm with instructions that you expect them to pay it, as [Defense counsel] is the one here acting in its behalf, but I do believe that you can, in fact, enter sanctions. And I brought an order for that, if the Court chooses to do so.

THE COURT:     Okay. I think the Court has the discretion to order sanctions as well against the individual.

[DEFENDANTS]: Judge, if I may respond briefly.

THE COURT:     Yeah.

[DEFENDANTS]: I don't have an opinion today as to the Court's jurisdiction over TPCIGA or their individuals. I, as you know, am not here on their behalf. I do not represent TPCIGA.

THE COURT:     Right.

[DEFENDANTS]: I'm here on behalf of the insureds. They were told of the Court's order. Should the Court see fit to impose sanctions, again, I don't have an opinion on that. I would say that I would not be the appropriate party, neither my firm, to impose the sanctions on because we do not represent them. We -- our ethical duty does not run to them.

THE COURT:     Who is your client?

[DEFENDANTS]: My client is the insureds, Tina Marie Jamison and James Evert Holt.

THE COURT:     The insureds and the insurance.

[DEFENDANTS]: Yes.[1]

---

[1]While we discuss *infra* how Relator differs statutorily from an insurer, the duty to defend relationship makes the following analogously applicable. A contractual relationship results where a defendant's insurer honors its duty to defend by hiring a law firm to represent the insureds, but that does not make the insurer a party to the lawsuit, nor is the insurer the "client" in the sense of being a party to the tort action. *Employers Casualty Co. v. Tilley*, 496 S.W.2d 552 (Tex. 1973), yielded a body of law regarding the "tripartite relationship among an insurer, defense counsel, and insured in the context of insurance defense litigation." *In re Sassin*, 511 S.W.3d 121, 126 (Tex. App.—El Paso 2014, no pet.). In a tort claim, the lawyer hired represents the insured, and counsel owes to the insured unqualified loyalty. *See Unauthorized Practice of Law Comm. v. Am. Home Assur. Co.*, 261 S.W.3d 24, 26–29, 36–46 (Tex. 2008). Importantly, neither the insureds, RPI Defendants, nor RPI Plaintiffs had asserted a direct cause of action against Relator in the matter below. *See Jun v. Lloyds & Other Various Insurers*, 37 S.W.3d 59, 63 (Tex. App.—Austin 2000, pet. denied) (before judgment, generally plaintiffs have no third-party cause of action against a defendant's insurance entity).

THE COURT: Okay. I don't think --

[DEFENDANTS]: Any order that the Court does issue, I will pass it along.

THE COURT: And these representatives are for -- are of Progressive?

[DEFENDANTS]: No, Judge, of the Guaranty Fund.

THE COURT: Okay.

[DEFENDANTS]: Yes, Texas Property -- I have it here -- Casualty Insurance Guaranty Association, TPCIGA for short.

THE COURT: Well, I'm going to let the Court of Appeals tell me I'm wrong and redo it. No skin off my back.

[PLAINTIFFS]: Your Honor, I have a proposed order with a blank for the proposed sanctions question.

THE COURT: Okay. The Court clearly had ordered the representative to be here because the -- his or her presence was germane to the issue that was before the Court.

[DEFENDANTS]: And, Judge, just on that point, I don't believe their presence is germane to the outstanding issue, which is just the lien. It is an issue that would be germane in any case -- Guaranty Fund regular first-party case. So I don't believe that their presence would be germane to the issues. As I said, we have come to agreements on the settlement release.

[PLAINTIFFS]: No, Your Honor, that is incorrect.

THE COURT: I think globally it's -- there's no doubt that their presence was -- was germane or is germane. How much sanctions are you asking for?

[PLAINTIFFS]: Your Honor, I'm going to leave that up to you.

In an order signed on June 27, 2025, the trial court issued sanctions against Relator in the amount of $6,000 to be paid within two weeks from the date of the trial court's order. The trial court found that Relator had failed to comply with two prior court orders. Specifically, (1) the trial court had "previously ordered [Relator] to settle and fund the claims of Plaintiffs as reflected in the Court's Order entered January 31,

2025," even though the order does not name Relator or its representatives, and (2) the trial court "issued an order requiring all parties appear before this Court on June 27, 2025 at 1:45 p.m., including the adjustor with [Relator]." The trial court concluded that Relator's "repeated failures to comply with this Court's orders constitute a willful disregard for the authority of the Court and have prejudiced Plaintiffs by unnecessarily prolonging the resolution of their claims and increasing litigation costs."

In a letter addressed to the trial court, Relator informed the court that although it was involved in the resolution of the underlying insurance claim, it was not a party to the suit, nor was it subject to the trial court's orders under the Guaranty Act. As to the status of the claim, Relator stated that checks had been issued to two of the three plaintiffs on June 18, 2025, and funds had been deposited into the trial court's registry for the third plaintiff on June 26, 2025, a day before the last hearing on RPI Plaintiffs' motion to enforce the settlement.

## II. *Standard of Review*

A writ of mandamus is an order that compels "a public official to perform a non-discretionary duty where the relator's right to have that duty performed is clear." *Wolters v. Wright*, 623 S.W.2d 301, 304 (Tex. 1981). "The object of the writ is to enforce the performance of [a] duty." 6 Roy W. McDonald & Elaine A. Grafton Carlson, *Texas Civil Practice: Appellate Practice* § 35:1 (2d ed.) (updated Feb. 2025). Thus, when rendering mandamus relief against a trial court, we conditionally grant the petition and direct the trial court to take action, rather than rendering such relief ourselves. *See, e.g.*, *In re Sanders*, 692 S.W.3d 868, 877 (Tex. App.—Eastland 2024, orig. proceeding) (conditionally granting the petition for writ of mandamus, directing the trial court to vacate an order denying a motion to withdraw deemed admissions).

6

Mandamus is an "extraordinary remedy" that is "available only in limited circumstances." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding); *see In re Allstate Indem. Co.*, 622 S.W.3d 870, 883 (Tex. 2021) (orig. proceeding). A writ of mandamus will issue only if the trial court clearly abused its discretion, and the relator lacks an adequate remedy by appeal. *In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 787 (Tex. 2021) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). "The relator bears the burden of proving these two requirements." *In re H.E.B. Grocery Co.*, 492 S.W.3d 300, 302 (Tex. 2016) (orig. proceeding) (per curiam); *Walker*, 827 S.W.2d at 840.

With respect to the first requirement, a trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *In re A.L.M.-F.*, 593 S.W.3d 271, 282 (Tex. 2019); *In re Cerberus Cap. Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). In addition, because a trial court has no discretion in determining what the law is or in applying it to the facts, a trial court abuses its discretion if it fails to correctly analyze or apply the law. *See Prudential*, 148 S.W.3d at 135; *see also In re J.B. Hunt Transp., Inc.*, 492 S.W.3d 287, 294 (Tex. 2016) (orig. proceeding).

"[S]tatutory interpretation is an issue of law." *In re Academy, Ltd.*, 625 S.W.3d 19, 25 (Tex. 2021) (citing *Lockheed Martin Corp. v. Hegar*, 601 S.W.3d 769, 774 (Tex. 2020)). When our analysis includes issues of statutory interpretation, we follow settled principles of statutory interpretation. *Id.*; *See First Sabrepoint Cap. Mgmt., L.P. v. Farmland Partners Inc.*, 712 S.W.3d 75, 82 (Tex. 2025); *In re Kelly*, No. 11-24-00066-CV, 2024 WL 2751280, at *3 (Tex. App.—Eastland May 30, 2024, orig. proceeding). "We construe words in a statute according to their 'plain and common meaning, unless a contrary intention is apparent from the context, or unless such a construction leads to absurd results.'" *Ferchichi v. Whataburger Rest.*

*LLC*, 713 S.W.3d 330, 337 (Tex. 2025) (quoting *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008)). We "presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen." *Walgreens v. McKenzie*, 713 S.W.3d 394, 399 (Tex. 2025) (quoting *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011)).

### III. *Discussion*

Relator challenges the trial court's imposition of a sanction, arguing that the trial court had no power or jurisdiction to render its order because (1) Relator is not a party to the underlying lawsuit, and (2) the sanction order runs afoul of the Guaranty Act's protections afforded to Relator.

### A. *Applicable Law*

District courts possess "inherent powers that aid the exercise of their jurisdiction, facilitate the administration of justice, and preserve the independence and integrity of the judicial system." *Brewer v. Lennox Hearth Prods., LLC*, 601 S.W.3d 704, 718 (Tex. 2020). However, that power is not boundless. For instance, a district court lacks power to compel any individual to appear as a witness if that individual resides more than one hundred and fifty miles from the courthouse of the county in which suit is pending and outside the county of suit. *See* TEX. R. CIV. P. 176.3 ("A person may not be required by subpoena to appear or produce documents or other things in a county that is more than 150 miles from where the person resides or is served."); *see also In re Weatherford Int'l, LLC*, 688 S.W.3d 874, 881 (Tex. 2024) (orig. proceeding) (per curiam). A trial court's inherent power to sanction individuals is likewise limited as the court's power to sanction "exists to the extent necessary to deter, alleviate, and counteract bad faith abuse of the judicial process." *See Brewer*, 601 S.W.3d at 718 (quoting *Houtex Ready Mix Concrete &*

8

*Materials v. Eagle Const. & Env't Servs., L.P.*, 226 S.W.3d 514, 524 (Tex. App.—Houston [1st Dist.] 2006, no pet.)).

Significantly, we have found no authority permitting a trial court to sanction a non-attorney, *non-party*—although we observe instances when a trial court may hold a non-party in contempt,[2] such as, when a non-party refuses to comply with a subpoena to produce documents or to comply with a court order to appear for a deposition or to permit inspection of land. *See* TEX. R. CIV. P. 176.8(a), 196.7, 205.3(a), 215.2(a), (c); *see also In re Suarez*, 261 S.W.3d 880, 883 (Tex. App.—Dallas 2008, orig. proceeding) ("Although a court may sanction counsel, who are not parties to the proceedings, . . . [w]e know of no other basis for sanctioning a non-party under the rules.") (internal citations omitted); *In re Prince*, No. 14-06-00895-CV, 2006 WL 3589484, at *4 (Tex. App.—Houston [14th Dist.] Dec. 12, 2006, orig. proceeding) (per curiam) ("[A] court's power to impose sanctions on non-parties is limited to its contempt power.").

Non-parties in general stand in a different position before the trial court than do parties to the litigation, over whom it is clear that the trial court has both personal and subject-matter jurisdiction. *See In re Berry*, 578 S.W.3d 173, 180 (Tex. App.—Corpus Christi–Edinburg 2019, orig. proceeding); *Haas v. George*, 71 S.W.3d 904, 915 (Tex. App.—Texarkana 2002, no pet.) ("Generally, a trial judge has control over only those parties properly before the court."); *see also In re Walsh*, No. 01-24-00161-CV, 2024 WL 3260101, at *6 (Tex. App.—Houston [1st Dist.] July 2, 2024, orig. proceeding). Without personal and subject-matter jurisdiction, the trial court cannot issue a valid and binding order over the party it purports to bind. *See Guardianship of Fairley*, 650 S.W.3d 372, 379 (Tex. 2022) ("To issue a valid and

---

[2]The punishment for contempt of a trial court's orders is limited to "a fine of not more than $500 or confinement in the county jail for not more than six months, or both such a fine and confinement in jail." TEX. GOV'T CODE ANN. § 21.002(b) (West 2023).

binding judgment or order, a court must have both subject-matter jurisdiction over a case and personal jurisdiction over the party it purports to bind."); *see also Ad Villarai, LLC v. Chan Il Pak*, 519 S.W.3d 132, 137 (Tex. 2017) (per curiam) ("[A]n order 'is void when a court has no power or jurisdiction to render it.'" (quoting *Urbish v. 127th Judicial Dist. Court*, 708 S.W.2d 429, 431 (Tex. 1986) (orig. proceeding))).

With these limitations to the trial court's powers in mind, we further acknowledge Relator's arguments and claim of protection under the Guaranty Act. Under the Guaranty Act, when an insurer becomes impaired, the TPCIGA is charged with investigating, compromising, settling, and paying covered claims owed by an impaired insurer. *See* INS. §§ 462.004(2) (defining "Association"), 462.201 (defining "covered claim"), 462.301 (general duties).

Under Section 462.011(a)(2) of the Insurance Code, "[l]iability does not exist and a cause of action does not arise against" the TPCIGA or the TPCIGA's agents or employees "for any good faith act or omission in performing the person's powers and duties under this chapter." *Id.* § 462.011(a)(2). Further, Section 462.011(b) provides that "the attorney general shall defend any action to which this section applies that is brought against . . . the [TPCIGA] or the [TPCIGA's] agent or employee" when it regards the "applicability or effect of the immunity created by Subsection (a)." *Id.* § 462.011(b).

Although the TPCIGA may review any existing settlement, release, or judgment to which an impaired insurer or the impaired insurer's insured was a party, the association is not bound by:

> (1) a judgment taken before the designation of impairment in which an insured under a liability insurance policy or the insurer failed to exhaust all appeals;
>
> (2) a judgment taken by default or consent against an insured or the impaired insurer; or

(3) a judgment, settlement, or release entered into by the insured or the impaired insurer.

*Id.* §§ 462.301, .303(a)(1)–(3).

Additionally, TPCIGA is not liable for:

[A]ny other claim or damages against the insured, an impaired insurer, the association, the receiver, the special deputy receiver, the commissioner, or the liquidator, including a claim for:

> (1) recovery of attorney's fees, prejudgment or postjudgment interest, or penalties;

> (2) extracontractual damages, multiple damages, or exemplary damages; or

> (3) any other amount sought in connection with the assertion or prosecution of a claim, without regard to whether the claim is a covered claim, by or on behalf of:

>> (A) an insured or claimant; or

>> (B) a provider of goods or services retained by an insured or claimant.

*Id.* § 462.302(c).

Moreover, any suit against TPCIGA "relating to an action or ruling of the commissioner or association" under the Guaranty Act must be brought in Travis County. *Id.* § 462.017(b).

B. *Analysis*

At the outset, we note that the trial court's order does not specify the authority under which sanctions were imposed. Neither the trial court in its order of sanctions nor RPI Plaintiffs[3] or RPI Defendants substantively address the Insurance Code's immunities and protections afforded by the legislature to Relator and its agents and employees. The trial court made no explanation of how it would be authorized under

---

[3]While RPI Plaintiffs summarily *argue* that Relator acted in "bad faith," and that Relator is therefore subject to the trial court's oversight under the statute, there was no show cause hearing, no evidence of bad faith presented before the trial court, and no evidence of bad faith has been presented to us by RPI Plaintiffs in response to Relator's mandamus petition.

11

the Guaranty Act to issue its order of sanctions. Further, there is no indication that the Attorney General was notified to defend Relator as to the application of the statutory immunities cited above. Regardless, Relator is not a named party in the underlying suit. Accordingly, our opinion is not contingent on the application of the Guaranty Act, and, in this matter, we express no opinion as to whether such sanction would or would not be enforceable under the Guaranty Act, even if jurisdiction over Relator had been established. *See* TEX. R. APP. P. 47.1, 52.8.

Because Relator is a non-party, the trial court's ability to issue an order binding Relator was contingent on its exercise of personal jurisdiction over Relator. *See Guardianship of Fairley*, 650 S.W.3d at 379. Personal jurisdiction is invoked by a party's appearance before the court or by the proper service of process upon the party—and there is no evidence of either here. *See* TEX. R. CIV. P. 120, 124; *Guardianship of Fairley*, 650 S.W.3d at 379; *see also In re D & J Alexander Mgmt., LP*, No. 04-14-00448-CV, 2014 WL 4723136, at *3 (Tex. App.—San Antonio Sept. 24, 2014, orig. proceeding) ("A non-party's receipt of courtesy hearing notices also does not constitute a 'general appearance' for purposes of jurisdiction."); *see also, e.g.*, *Walsh*, 2024 WL 3260101, at *6 (concluding trial court lacked jurisdiction to order a non-party to appear); *In re Proassurance Ins. Co.*, No. 05-15-01256-CV, 2016 WL 25645, at *2 (Tex. App.—Dallas Jan. 4, 2016, orig. proceeding) (same). Thus, absent personal jurisdiction, the trial court's order sanctioning Relator was not binding on Relator, and the trial court abused its discretion in issuing the order. *See Guardianship of Fairley*, 650 S.W.3d at 379; *Prudential*, 148 S.W.3d at 135. Further, as stated previously, we have found no authority permitting the imposition of sanctions on a non-attorney, non-party. *See Suarez*, 261 S.W.3d at 883; *Prince*, 2006 WL 3589484, at *4.

Even should we assume that the trial court sought to exercise its contempt powers, it lacked the statutory authority to do so under these circumstances. *See*

TEX. R. CIV. P. 176.8(a), 196.7, 205.3(a), 215.2(a), (c). For instance, a trial court may hold a non-party in contempt for failure to comply with a subpoena or a valid court order. *See* TEX. R. CIV. P. 176.8(a), 196.7, 205.3(a), 215.2(a), (c). There is no evidence that Relator was ever subpoenaed as a non-party, and Relator and its representatives were located more than 300 miles away from Midland County—the county of suit; consequently, compulsory process would have been unavailable. *See* TEX. R. CIV. P. 176.3. Moreover, as discussed *supra*, the trial court was without personal jurisdiction over Relator, so there existed no binding, valid order with which Relator could fail to comply. *See Guardianship of Fairley*, 650 S.W.3d at 379.

Contempt is "disobedience to or disrespect of a court by acting in opposition to its authority." *In re Reece*, 341 S.W.3d 360, 364 (Tex.2011) (quoting *Ex parte Chambers,* 898 S.W.2d 257, 259 (Tex. 1995) (orig. proceeding)). Contempt is a broad and inherent power of a court, that should be exercised with caution. *Id.* Civil contempt is remedial and coercive in nature—conditioned on obedience with the court's order. *Id.* at 365. Thus, civil contempt is the process by which a court exerts its judicial authority to compel obedience to some order of the court. *In re Krueger,* No. 03-12-00838-CV, 2013 WL 2157765, at *4 (Tex. App.—Austin May 16, 2013, orig. proceeding) (citing *Ex parte Padron*, 565 S.W.2d 921, 924 (Tex. 1978)). Contempt which occurs outside of the court's presence is referred to as constructive contempt. *Reece*, 341 S.W.3d at 365. All of the alleged conduct by Relator that was called into question would have occurred outside of the 441st District Court courtroom. More procedural safeguards are afforded to constructive contemnors, including notice, a hearing to defend or explain the charges, and the opportunity to obtain an attorney. *Id.* It does not appear that any of these requirements of due process were afforded Relator prior to imposition of the trial court's $6,000 fine.

The trial court's sanction here also exceeded any potentially permissible fine amount associated with a finding of contempt. *See* GOV'T § 21.002 (West 2023); *In re Perrilloux*, No. 05-19-01584-CV, 2020 WL 2092483, at *5 (Tex. App.—Dallas May 1, 2020, org. proceeding) (concluding that the trial court was limited to imposing a $500 monetary fine on a non-party and therefore, the trial court's imposition of a $18,566.34 fine, was an abuse of discretion); *In re Guardianship of Benavides*, No. 04-13-00196-CV, 2014 WL 1494606, at *3 (Tex. App.—San Antonio Apr. 16, 2014, org. proceeding) ("Even when a non-party is found guilty of contempt for failure to comply with a subpoena or previous order, the permissible sanctions are limited, and notably do not include an award of reasonable and necessary attorney's fees payable to another party." (citing GOV'T § 21.002(b))).

Having concluded that the trial court abused its discretion in assessing sanctions, we next address whether Relator possesses an adequate remedy by appeal to remedy this error. *See USAA Gen. Indem. Co.*, 624 S.W.3d at 787; *H.E.B. Grocery Co.*, 492 S.W.3d at 302. Mandamus is proper here because the trial court is without authority to issue an order of sanctions on a non-attorney, non-party. *See Suarez*, 261 S.W.3d at 883; *Prince*, 2006 WL 3589484, at *4. Relator, as a non-party to the case, would have no right to appeal and therefore no adequate appellate remedy otherwise exists. *See In re Monson Law Firm, LLC*, 714 S.W.3d 256, 269 (Tex. App.—Corpus Christi–Edinburg 2025, org. proceeding) ("When a non-party has no right to appeal, mandamus is appropriate."); *City of Houston v. Chambers*, 899 S.W.2d 306, 308 (Tex. App.—Houston [14th Dist.] 1995, org. proceeding) (concluding that because the city was not a party to the lawsuit, it "has no adequate remedy by appeal, [and] mandamus may lie"); *see also Prince*, 2006 WL 3589484, at *2.

## IV. *This Court's Ruling*

For the reasons expressed above, we are of the opinion that Relator has met its burden to obtain mandamus relief. Accordingly, we conditionally grant the writ of mandamus and direct the trial court to vacate its sanction order. Our writ will issue only if the trial court fails to comply by September 5, 2025.


W. BRUCE WILLIAMS
JUSTICE


August 21, 2025

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.